UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOIS NEMETH,

        Plaintiff,

v.

Case No. 08-cv-15326

Paul D. Borman
United States District Judge

CITIZENS FINANCIAL GROUP, d/b/a
CHARTER ONE BANK,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S AMENDED MOTION *IN LIMINE* TO PRECLUDE EITHER EVIDENCE OR ATTORNEY STATEMENTS RELATING TO "STRAY REMARKS" OF DISCRIMINATORY ANIMUS TOWARD ARAB AMERICANS (ECF NO. 70)

This matter is before the Court on Defendant's Amended Motion *in Limine* to Preclude Either Evidence or Attorney Statements Relating to "Stray Remarks" of Discriminatory Animus Toward Arab Americans. (ECF No. 70.) Plaintiff filed a Response (ECF No. 82) and Defendant filed a Reply (ECF No. 84.) The Court held a hearing on August 1, 2012. For the reasons that follow, the Court GRANTS Defendant's motion.

**I.    BACKGROUND**

Plaintiff Lois Nemeth ("Plaintiff" or "Nemeth") claims that Defendant Citizens Financial Group d/b/a Charter One Bank ("Charter One"), unlawfully discriminated and retaliated against her on account of her association with and advocacy on behalf of Arab-Americans in violation of Title VII, 42 U.S.C. § 200e-2(a), and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), Mich.

1

Comp. Laws. § 37.2202(a). On June 24, 2012, this Court granted in part and denied in part Defendant's motion for summary judgment, granting the motion regarding Plaintiff's hostile work environment claim but denying the motion on all remaining claims. (ECF No. 46.)

As pertinent to this motion *in limine*, the following facts were summarized by this Court in its summary judgment ruling:

> On March 7, 2007 an anonymous letter (the "Anonymous Letter") was sent to Charter One's CEO Larry Fish accusing Plaintiff and her staff of improper banking activity. The Anonymous Letter stated "[t]here is a big fraud going on in Michigan, Dearborn, especially at the branch at Schaefer and Michigan where some of the members that includes the manager Lois [Nemeth], the banker Erica [Cartagena] [sic] and the BBO Mahmoud [Serhane] and I think the regional manager in this area are involved in it." The letter went on to accuse those persons of dealing with a "mortgage person whose office is at Nine Mile in Detroit" who the author claimed was charging customers to help them obtain loans. The author also alleged that "[t]he manager of this branch has already a gas station with her Iraqi boyfriend!!!" Plaintiff did in fact have an ownership interest in a gas station with her business partner Maher Ankouni ("Ankouni"), who is Lebanese. Plaintiff is married to Zoltan Nemeth.
>
> As a result of the Anonymous Letter's accusations, Charter One opened a Corporate Security investigation (the "Investigation"). Defendant's Corporate Security Regional Investigations Manager, Candace Gardin ("Gardin"), was in charge of the investigation. Gardin interviewed many of the Branch's employees.
>
> \*     \*     \*
>
> After her Interview, Plaintiff was placed on paid suspension due to the fact that the Investigation was ongoing. Plaintiff was instructed not to talk to any colleagues or customers about the Investigation and to make herself available for further questioning. Gardin and Mazur claimed that from March 21–29, 2007 they repeatedly tried to contact Plaintiff about setting up another interview. Gardin testified that she tried calling Plaintiff's home and cell phone three times, on March 21, 27, and 28 and left messages asking Plaintiff to call her back. Mazur stated that he tried calling Plaintiff on March 29, and left a message directing her to meet with him on March 30.
>
> Mazur, Minghine, and HR Director Kelly Schaefer ("Schaefer," collectively the "decision-makers") decided to terminate Plaintiff's employment on March 30 after

> Plaintiff failed to show up for a second interview or return any of Gardin or Mazur's messages. There was also evidence that the decision-makers relied, in part, on information learned in the Investigation. On April 2, 2007, Plaintiff received a letter from Schaefer (the "Termination Letter") informing her that she had been fired for violating Section 8.3 of Charter One's Code which requires employees to cooperate with ongoing investigations. The Termination Letter also said that Defendant believed her failure to return Gardin/Mazur's calls was an indication she had abandoned her job.

*Nemeth v. Citizens Financial Grp., Inc.*, No. 08-cv-15326, 2011 WL 2531200, at *2-4, 9 (E.D. Mich. June 24, 2012) (footnotes and record citations omitted).

In the instant Motion *in Limine*, Defendant seeks to preclude evidence of four specific remarks that Plaintiff intends to introduce:[1]

- **"Comment 2:"** In December 2005, Dave Salono, a branch manager at another Charter One branch in Dearborn with a heavy Arab American customer base and who assumed Plaintiff's duties after her discharge, allegedly "made reference to [the Arab American community's] language" and asked her "how can you stand being in that area?"

- **"Comment 3:"** In June 2006, while Plaintiff and Eli Akel, someone she describes as Chaldean and being "high up in the business department," were eating hors d'oeuvres at a meeting, Plaintiff stated that she was "frustrated" and "having so many problems with these account closures, it's like if I go get 10 customers, they're closing out 20." In response, he allegedly stated, "Lois, be very careful about what you are saying" and that "they hate the word 'discrimination.'"

- **"Comment 4:"** In mid-December 2006, Akram Turk called Plaintiff and told her, "almost every day we're getting tons of close-outs," and "I think they're paying us back for what happened."

- **"Comment 5:"** In December 2006, Plaintiff telephoned Denise Soto, a friend of hers who worked in the anti-money laundering division, and told her she was "getting all of these [account] close-outs." In response, Soto allegedly stated, "honey, I'm telling

---

[1] Defendant's motion sought to exclude reference to or evidence of six separate remarks. Plaintiff does not contest the motion with respect to two of the six remarks, i.e. "Comment 1" made by an unnamed employee in Rhode Island and "Comment 6" made to Plaintiff by Pam Bryant relating to a comment made by a third person to Ms. Bryan. (ECF No. 82, Pl.'s Resp. to Stray Remark Mot. 4 n. 2.)

3

you right now . . . you need to be very careful" and that "they have these accounts marked OFAC and there is no way they're OFAC."

## II. LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions in limine-in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999). District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir.1991).

## III. ANALYSIS

Plaintiff offers the statements made to her by these Charter One employees to demonstrate the allegedly "discriminatory atmosphere" at Charter One and Charter One's alleged discriminatory retaliatory motive for her suspension and termination. (ECF No. 82, Pl.'s Resp. to Stray Remarks Mot. 4.) Defendant responds that the remarks are not probative of Charter One's discriminatory intent because they are "stray remarks," ambiguous, vague and made by non-decisionmakers and are remote in time to the decision to terminate Plaintiff.[2]

The touchstones for admissibility of otherwise "stray remarks" are (1) whether the alleged remarks were made by a decisionmaker or the decisionmaker's agent, (2) whether they were related

---

[2] Plaintiff contends that the stray remark analysis is somehow inapt because these remarks are being offered not to show that the speakers harbored discrminatory animus that should be attributed to the Defendant but to show a discriminatory atmosphere at Charter One. (ECF No. 82, p. 4.) This is a distinction without a difference, because at bottom the remarks are being offered to demonstrate that discriminatory animus infected the decisionmaking process. How can these remarks serve that purpose but by attribution? Plaintiff seeks to demonstrate, through these remarks, a "corporate atmosphere" of impermissible discriminatory animus that allegedly infected the decision to terminate Plaintiff, thus qualifying the statements for potential exclusion as "stray remarks."

4

to the decisionmaking process, (3) whether they were vague, ambiguous or isolated and (4) whether they were made close in time to the adverse employment decision. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994).[3] As this Court noted in *Greenfield v. Sears, Roebuck, & Co.*, No. 04-71086, 2006 WL 508655 (E.D. Mich. Mar. 2, 2006), in deciding whether the remarks of a nondecisionmaker could serve as direct evidence of discrimination:

> In [] discrimination cases, courts look at whether the discriminatory comments were: 1) made by a decision-maker or by an agent within the scope of his employment; 2) related to the decision-making process; 3) more than merely vague, ambiguous, or isolated remarks, and; 4) proximate in time to the act of termination. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994). "[F]ederal courts have consistently held that isolated or vague comments made by non-decisionmakers long before the adverse employment decision is made are not probative of an employers' discriminatory motivation." *Krohn v. Sedgwick James of Mich., Inc.*, 244 Mich. App. 289, 300, 624 N.W.2d 212 (2001). While remarks made by non-decisionmakers "are not indicative of discriminatory intent, the statements of managerial-level employees who have the ability to influence a personnel decision are relevant." *Johnson v. The Kroger Co.*, 319 F.3d 858, 868 (6th Cir. 2003).

2006 WL 508655, at *6. In *Greenfield*, concluding that the proffered stray remarks did not constitute direct evidence of discrimination, this Court distinguished *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356-57 (6th Cir. 1998), in which the Sixth Circuit outlined the relevant factors to consider in deciding whether remarks made by nondecisionmakers may serve as evidence of a "discriminatory atmosphere." In *Ercegovich*, the Sixth Circuit explained:

> Although discriminatory statements by a nondecisionmaker, standing alone, generally do not support an inference of discrimination, the comments of a nondecisionmaker are not categorically excludable. Circumstantial evidence establishing the existence

---

[3] Although Plaintiff criticizes application of the *Cooley* factors, they are reiterated in substance as the relevant factors to consider in *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), discussed *infra*, the case on which Plaintiff relies to support her "discriminatory atmosphere" claim: "[C]ourts must carefully evaluate factors affecting the statement's probative value, such as the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action." *Id.* at 357.

5

of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.

\* \* \*

Discriminatory statements may reflect a cumulative managerial attitude among the defendant-employer's managers that has influenced the decisionmaking process for a considerable time. Thus, management's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered into the decisionmaking process in another context. We therefore believe that evidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment. This is especially true when the discriminatory statement is not an off-hand comment by a low-level supervisor but a remark by a senior official evidencing managerial policy.

We do not mean to imply that any ageist comment by a corporate executive is relevant as evidence of a discriminatory corporate culture. Rather, the courts must carefully evaluate factors affecting the statement's probative value, such as the declarant's position in the corporate hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action, as well as whether the statement buttresses other evidence of pretext.

154 F.3d at 356-57 (internal citations and quotation marks omitted). In *Ercegovich*, the Sixth Circuit concluded that statements of two non-decisionmakers were relevant circumstantial evidence where the speakers both occupied senior positions in plaintiff's department, their discriminatory remarks were made at meetings attended by higher management, the remarks occurred two months and fourteen months before plaintiff's termination and the most hostile discriminatory remarks were from the head of the division, which would tend to have a greater impact on the corporate culture and on those below him in the managerial scheme. *Id.* at 357. As this Court noted in *Greenfield*, the comments found to be probative of a discriminatory atmosphere in *Ercegovich* "were mostly made

by an individual who had input in the discriminatory decision." 2006 WL 508655, at *7.

This Court's subsequent decision in *Greenfield v. Sears, Roebuck and Co.*, No. 04-71086, 2006 WL 2927546 (E.D. Mich. Oct. 12, 2006), granting Defendant's motion *in limine* to exclude evidence of several remarks of nondecisionmakers, applied the *Cooley* factors in an analysis of whether stray remarks could serve as circumstantial evidence of a "corporate bias" and concluded that the proffered remarks bore too great a risk of unfair prejudice:

> The risk of admitting evidence of a biased opinion made by an employee who is unrelated to the decisionmaking process is that, even if the remark is isolated, ambiguous, or remote in time, it unfairly suggests to the jury that the remark and its underlying motivation have the imprimatur of the employer.
>
> The stray comments made by non-decisionmaker in the instant case are unduly prejudicial under Rule 403 because they would confuse the jury as to the actual issue of the case. Although discriminatory statements may reflect a cumulative managerial attitude that has influenced the decisionmaking process at Defendant, Plaintiff does not provide evidence of other manager's discriminatory statements to support that a corporate bias existed. The comments made by McCurry have no bearing on whether discrimination played a part in the Plaintiff's demotion, and allowing these remarks may mislead the jury as to its importance.

*Greenfield*, 2006 WL 2927546, at *8 (internal quotation marks and citation omitted).

Plaintiff relies on *Risch v. Royal Oak Police Dep't*, 581 F.3d 383 (6th Cir. 2009) in support of her contention that the four proffered remarks constitute evidence of an overriding discriminatory atmosphere at Charter One. In *Risch*, both named and unnamed officers allegedly made derogatory comments about women. Without addressing the admissibility of the proffered evidence, the Sixth Circuit held that plaintiff had presented sufficient evidence of a "discriminatory atmosphere" to survive summary judgment where several members of the "managerial arm" of the police department were alleged to have made discriminatory remarks against female officers and where numerous "unnamed" officers had made express remarks regarding the advancement of females in the

7

department. 581 F.3d at 392-93. Judge Griffin, in a lengthy dissent, concluded that the proffered evidence was largely inadmissible and non-probative on the issue of the decisionmakers' alleged discriminatory motives: "To impute allegedly discriminatory comments and conduct by non-decision making employees within the Department of Chief Quisenberry and conclude that discriminatory animus may have infected his denial of Risch's request for a promotion requires an inference upon inference - untethered to any proper evidentiary foundation." 581 F.3d at 398-99 (Griffin, J. dissenting). Regardless of their admissibility, the remarks at issue in *Risch* were not ambiguous, i.e. they directly disparaged women and their place on the force, and were in several instances made by employees in managerial positions. *Id.* at 393.

With this background, the Court turns to the specific remarks at issue in the instant motion and concludes that all four proffered statements constitute stray remarks and are inadmissible to prove that Charter One was plagued by a "discriminatory atmosphere" or "corporate culture" of discrimination.

**Comment 2:** In December 2005, Dave Salono, a branch manager at another Charter One branch in Dearborn who assumed Plaintiff's duties after her discharge, allegedly "made reference to [the Arab American community's] language" and asked her "how can you stand being in that area?" This comment was made by a non-decisionmaker, indeed by a colleague of Plaintiff's who occupied a position equivalent to Plaintiff's at the bank, over two years prior to Plaintiff's termination and had no arguable relationship to the decision to suspend and terminate Plaintiff. Solano's remark is not probative of an alleged "discriminatory atmosphere" at Charter One.[4]

---

[4] Plaintiff argues that Solano's remark is alternatively admissible as relevant to Plaintiff's *prima facie* case as evidence that Solano, who replaced Plaintiff, is not a member of Plaintiff's protected class, i.e. that Plaintiff was replaced by someone who was not closely associated with or an advocate

8

**Comment 3:** In June 2006, while Plaintiff and Eli Akel, someone Plaintiff describes as Chaldean and being "high up in the business department," were eating hors d'oeuvres at a meeting, Plaintiff stated that she was "frustrated" and "having so many problems with these account closures, it's like if I go get 10 customers, they're closing out 20." In response, he allegedly stated, "Lois, be very careful about what you are saying" and that "they hate the word 'discrimination.'"

Akel was not a decisionmaker or in any way related to the decision to terminate Plaintiff. The alleged remark was made nearly a year before Plaintiff was terminated. Moreover, this comment is patently ambiguous - who are "they," and more significantly how is it probative of discriminatory animus that "they" hate the word "discrimination?" Indeed, the remarks can be interpreted as evidence that Charter One does not condone discrimination. Akel's remarks are not probative of a corporate culture to discriminate against Arab Americans.

**Comment 4:** In mid-December 2006, Akram Turk called Plaintiff and told her, "almost every day we're getting tons of close-outs," and "I think they're paying us back for what happened."

Akram Turk was not a decisionmaker or related to the decisionmaking process in any way. His comments were made more than a year before Plaintiff was terminated and it is entirely unclear what is meant by "paying us back for what happened." Moreover, at his deposition, Turk could not

---

for Arab Americans. Although Plaintiff does not identify the specific rule of evidence on which she intends to rely to support the admission of this hearsay statement for this purpose, opposing counsel suggested at oral argument that Plaintiff may intend to offer the remark as a statement of Solano's then existing state of mind under Fed. R. Evid. 803(3) to demonstrate that he was not sympathetic to the Arab American community. As such, the Court would consider admiting the statement and permiting Charter One to request an instruction to the jury that Solano's comment be used only as evidence of his then existing state of mind relating to his sympathies with the Arab American Community and not as bearing on the discriminatory motives of the Defendant, for whom Solano does not speak. The Court will reserve final ruling on the admissibility of Solano's remark for this limited purpose, however, until it is offered in context at the time of trial.

9

even recall if, after this alleged call, the account close-outs continued. *Nemeth*, 2011 WL 2531200, at *2 n.2.

Plaintiff argues that Turk's remarks are not being offered as proof of a corporate discrminatory motive but as evidence that certain "account closures" were retaliatory. Regardless whether the remark is offered to prove discriminatory corporate intent or retaliatory corporate motive, the analysis is the same. Turk was not a decisionmaker and his state of mind is not at issue in this case - his remark is only relevant if it serves to demonstrate discriminatory intent on the part of Charter One and the decisionmakers who actually terminated Plaintiff. The alleged 2006 remark by Turk, a nondecisionmaker with no managerial role, is completely ambiguous as to "what" they are being "paid back for," is not probative of a corporate culture of discriminatory animus and can only serve to confuse the jury.

**Comment 5:** In December 2006, Plaintiff telephoned Denise Soto, a friend of hers who worked in the anti-money laundering division, and told her she was "getting all of these [account] close-outs." In response, Soto allegedly stated, "honey, I'm telling you right now . . . you need to be very careful" and that "they have these accounts marked OFAC [Office of Foreign Assets Control] and there is no way they're OFAC."

This remark was made by a non-decisionmaker totally unrelated to the decisionmaking process more than a year before Plaintiff's suspension and termination. Moreover, as with the other proffered "stray remarks," this comment is entirely ambiguous and makes no direct reference to discriminatory conduct of any kind.

As this Court noted in *Greenfield, supra*, granting Defendant's motion *in limine* to exclude evidence of stray remarks: "It is not demonstrative of discrimination when an isolated

discriminatory remark is made by someone who has no managerial authority over the alleged discriminatory decision. Comments made long before the adverse employment action and comments by a non-decisionmaker have no probative value in a disparate treatment case." 2006 WL 2927546, at * 7 (internal quotation marks and citations omitted). "The risk of admitting evidence of a biased opinion made by an employee who is unrelated to the decisionmaking process is that, even if the remark is isolated, ambiguous, or remote in time, it unfairly suggests to the jury that the remark and its underlying motivation have the imprimatur of the employer." *Id.* at 8 (internal quotation marks and citation omitted).

None of the proffered remarks in the instant case is the type of remark that the Sixth Circuit has found to be probative of "discriminatory atmosphere" or a pervasive "corporate culture" of discrimination. Indeed, apart from the comment to attributed to Solano, none of the remarks on their face even directly refers to Arab-Americans or the Arab-American population. With regard to Solano's alleged comment, there is simply no evidence that this remark was representative of any "atmosphere" at Charter One - in fact Solano also worked at a branch in the Arab-American community and he replaced Plaintiff at her branch in Dearborn after she was terminated. Although this Court previously held that a genuine issue of material did exist regarding whether Solano was a member of Plaintiff's protected class, i.e. whether he was an advocate for the Arab American community, the Court never opined as to the relevance or strength of any evidence tending to suggest that Solano harbored discriminatory animus toward Arab Americans, let alone whether any such "animus" was representative of a corporate culture that would have affected the decision to suspend or terminate Plaintiff.

Plaintiff has failed to establish any reasonable nexus between any of the four proffered

remote-in-time, largely ambiguous remarks and the ultimate decision to suspend and terminate Plaintiff. These four individuals had no connection to the decisionmaking process nor is it even alleged that any of them offered information to or somehow could have influenced the decisionmakers. Admitting this evidence would lead to the very type of prejudicial inference expressly prohibited by Federal Rule of Evidence of 403.[5]

### IV. CONCLUSION

The Court GRANTS Defendant's motion to preclude evidence or attorney statements regarding the four "stray remarks." (ECF No. 70.)

IT IS SO ORDERED.

Paul D. Borman
United States District Judge

Dated: 8-10-12

---

[5] The Court rejects Plaintiff's one-sentence assertion that the statements of Akel, Turk and Soto are not hearsay because they are admissions of a party opponent under Fed. R. Evid. 801(d)(2). See *Liadis v. Sears, Roebuck and Co.*, 47 F. App'x 295, 303 (6th Cir. 2002) ("Statements by employees are outside of the scope of an employee's employment, and therefore not subject to the party-admission rule, when they concern decisionmaking processes into which the employee has no input, or decisions to which they were not a party."). While Plaintiff cites *Carter v. Univ. of Toledo*, 349 F.3d 269 (6th Cir. 2003) for the proposition that direct involvement in the decisionmaking process is not a prerequisite for finding a party admission, that case makes clear that there must be some involvement or influence on the part of the individual whose remarks are going to bind the corporation. 349 F.3d at 275. There is simply no argument that any of these speakers had any authority or influence, even indirectly, over the decision to suspend and terminate Plaintiff.