UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOIS NEMETH,

               Plaintiff,                            Case No. 08-cv-15326

                                                Paul D. Borman
v.                                        United States District Judge

CITIZENS FINANCIAL GROUP, d/b/a
CHARTER ONE BANK,

               Defendants.

_____/

## OPINION AND ORDER (1) DENYING CHARTER ONE'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OR ATTORNEY STATEMENTS RELATING TO PLAINTIFF'S MARCH 17, 2007 INVESTIGATIVE INTERVIEW (ECF NO. 71) AND (2) GRANTING IN PART AND DENYING IN PART CHARTER ONE'S *DAUBERT* MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF PLAINTIFF'S SOCIAL WORKER AND PURPORTED EXPERT, CHERYL LAJINESS, AS TO NON-ECONOMIC/EMOTIONAL DISTRESS DAMAGES (ECF NO. 72)

This matter is before the Court on (1) Charter One's Motion *In Limine* to Preclude Evidence or Attorney Statements Relating to Plaintiff's March 14, 2007 Investigative Interview (ECF No. 71) and Charter One's *Daubert*[1] Motion *In Limine* to Exclude Testimony of Plaintiff's Social Worker and Purported Expert, Cheryl Lajiness, as to Non-Economic/Emotional Distress Damages Claimed by Plaintiff (ECF No. 72). Plaintiff has filed responses (ECF Nos. 81, 79) and Defendant filed has filed replies (ECF Nos. 86, 85.) The Court held a hearing on August 1, 2012. For the reasons that follow, the Court DENIES Charter One's motion to exclude certain evidence regarding the March 14, 2007 Investigative Interview and GRANTS IN PART AND DENIES IN PART Defendant's

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

motion to preclude the testimony of Ms. Lajiness.

## I.    BACKGROUND

Plaintiff Lois Nemeth ("Plaintiff" or "Nemeth") claims that Defendant Citizens Financial

Group d/b/a Charter One Bank ("Charter One"), unlawfully discriminated and retaliated against her

on account of her association with and advocacy on behalf of Arab-Americans in violation of Title

VII, 42 U.S.C. § 200e-2(a), and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), Mich.

Comp. Laws. § 37.2202(a).   On June 24, 2012, this Court granted in part and denied in part

Defendant's motion for summary judgment, granting the motion regarding Plaintiff's hostile work

environment claim but denying the motion on all remaining claims.  (ECF No. 46.)

As pertinent to these motions *in limine*, the following facts were summarized by this Court

in its summary judgment ruling:

> On March 7, 2007 an anonymous letter (the "Anonymous Letter") was sent to
> Charter One's CEO Larry Fish accusing Plaintiff and her staff of improper banking
> activity. The Anonymous Letter stated "[t]here is a big fraud going on in Michigan,
> Dearborn, especially at the branch at Schaefer and Michigan where some of the
> members that includes the manager Lois [Nemeth], the banker Erica [Cartagena] [sic]
> and the BBO Mahmoud [Serhane] and I think the regional manager in this area are
> involved in it." The letter went on to accuse those persons of dealing with a
> "mortgage person whose office is at Nine Mile in Detroit" who the author claimed
> was charging customers to help them obtain loans.  The author also alleged that
> "[t]he manager of this branch has already a gas station with her Iraqi boyfriend!!!"
> Plaintiff did in fact have an ownership interest in a gas station with her business
> partner Maher Ankouni ("Ankouni"), who is Lebanese. Plaintiff is married to Zoltan
> Nemeth.
>
> As a result of the Anonymous Letter's accusations, Charter One opened a Corporate
> Security investigation (the "Investigation"). Defendant's Corporate Security Regional
> Investigations Manager, Candace Gardin ("Gardin"), was in charge of the
> investigation. Gardin interviewed many of the Branch's employees.
>
> Plaintiff was interviewed (the "Interview") on March 14, 2007 at Charter One's
> headquarters in Southfield, Michigan by Corporate Security investigators Gardin and

Courtney Gilbert ("Gilbert"). The Interview allegedly lasted seven and a half hours. Plaintiff claims that during the Interview she was treated unprofessionally and harassed because of her association with Ankouni. Plaintiff claims that although the Investigation was supposed to be about alleged loan brokering, the focus of Gardin's questioning centered on Plaintiff's personal life, and her relationship with Ankouni. Allegedly, Gardin repeatedly accused Plaintiff of sexual improprieties with her "Iraqi boyfriend," and asked her if Ankouni was a "friend with benefits" or if she was "getting a little bit of something-something on the side."

With regard to the loan broker issue, Plaintiff also claims that Gardin repeatedly accused her of knowingly dealing with Sleiman "Sam" Haidar ("Haidar") who Gardin believed was a broker. Plaintiff admitted that she worked with Haidar, and that she and Cartagena had gone out to a business dinner with him to discuss switching his accounts from National City to Charter One, however, Plaintiff claims that she was emphatic with him that if he charged people for loans he could not open an account with Charter One.

At the end of the Interview, Plaintiff claims Gardin coerced her into making a signed statement (the "Statement") that was untrue. Indeed, Plaintiff claims the first statement she wrote was torn up by Gardin. Further, she alleges that she wrote a second statement that was not accepted and also torn up. Plaintiff claims that she was so exhausted at the end of the Interview that after Gardin rejected her first two statements she finally asked "what do I need to say to get out of here?" Gardin then created the Statement, which Plaintiff contends contains many inaccurate facts, and in which Plaintiff assumed responsibility for knowingly dealing with a loan broker.

*Nemeth v. Citizens Financial Grp., Inc.*, No. 08-cv-15326, 2011 WL 2531200, at *2-3 (E.D. Mich. June 24, 2012) (footnotes and record citations omitted).

In the instant motions *in limine*, Charter One seeks to exclude evidence or testimony regarding the "tone and environment" of the Interview. Charter One also seeks to preclude Plaintiff's social worker and therapist, Cheryl Lajiness, from offering an expert opinion on the emotional distress suffered by Plaintiff as a result of the Interview, suspension and subsequent termination.

## II.   LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and

3

interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions in limine-in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999). District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir.1991).

## III.    ANALYSIS

### A.    Charter One's Motion *in Limine* to Exclude Argument or Evidence Regarding the Conditions of Plaintiff's March 14, 2007 Interview

Charter One first asserts that because this Court dismissed Plaintiff's hostile work environment claim, which was based solely on events that transpired during the Interview, any evidence regarding the "tone and environment" of that Interview are irrelevant to Plaintiff's remaining discrimination and retaliation claims. The Court disagrees. This Court dismissed Plaintiff's hostile work environment claim not for failure to demonstrate that the Interview involved harassing conduct but because Plaintiff "cannot prove the harassment affected a term or condition of her employment." *Nemeth*, 2011 WL 2531200, at *15. Indeed, in dismissing Plaintiff's hostile work environment claim for failure to demonstrate that the alleged harassment affected a term or condition of her employment, the Court expressly noted "that Plaintiff has alleged sufficient facts to indicate she was subjected to harassment (ie: prolonged interview over several hours without breaks, food, or water; being coerced into making the Statement; and being taunted repeatedly that she was stupid)." *Id.*

In its prior Opinion and Order, the Court stated: "While there are many aspects of Plaintiff's allegations that do not suggest a discriminatory animus, the Court holds that a genuine issue of

4

material fact exists regarding whether Gardin's conclusions were based on discrimination because of Plaintiff's association with Arab Americans." *Nemeth*, 2011 WL 2531200, at *12. In fact, the Court directly referred to the reportedly "harsh" conditions of the Interview in that portion of its Opinion that concluded an issue of fact did exist with respect to Gardin's alleged discriminatory animus, and whether those "harsh" conditions and alleged coercion of Plaintiff's statement created a triable issue of fact on the issue of pretext. *Id*. at *13. The Court also referred, in its prior Opinion and Order, to Gardin's questioning Plaintiff and other employees about Plaintiff's relationship with her "Iraqi boyfriend" and her co-ownership of a gas station with him, as facts creating a genuine issue on Gardin's alleged discriminatory animus. *Id*. at *14. While Charter One does not seek to exclude evidence regarding these facts, evidence regarding the Interview "tone and environment," as Charter One describes the facts it seeks to exclude, also is relevant to Plaintiff's discrimination claim. As the Court concluded in its summary judgment Opinion, "[a] reasonable juror could find that the fact that Gardin coerced Plaintiff into making the Statement is evidence that she did not believe the admissions contained in it were actually true and demonstrates pretext because the Statement was ultimately relied heavily upon by both Gardin and the decision-makers when they concluded (incorrectly) that Plaintiff was knowingly dealing with a broker." *Id*. at *14. Plaintiff cannot now be precluded from introducing evidence of the very facts that she alleges constituted coercion.

This Court's prior ruling that Plaintiff's hostile work environment claim was unsupported by sufficient evidence that the alleged harassment during the interrogation affected a term or condition of her employment, does not diminish the relevance of the conditions of the Interview to Plaintiff's remaining claims. Nor does the Court's dismissal of Plaintiff's hostile work environment

claim lessen the significance of any emotional distress that Plaintiff claims to have suffered as a result of the Interview, the allegedly coerced statement that resulted from the Interview, the suspension or the subsequent termination for alleged job abandonment. *See Van Horn v. Specialized Support Servs., Inc.*, 241 F. Supp. 2d 994, 1015 (S.D. Iowa 2003) (although plaintiff did not present sufficient evidence of pervasiveness she could still offer evidence of her emotional suffering arising out the harassment that led to her discharge). Plaintiff has articulated clearly enough her claim that her emotional distress damages stem from both the Interview itself, the allegedly coercive tactics that resulted in her statement, her suspension and ultimate termination for job abandonment, to place the issue of her alleged emotional distress before the jury. As the Court has already found, there exist genuine issues of material fact regarding whether Plaintiff's suspension was based, at least in part, on the results of the Investigation. *Nemeth*, 2011 WL 2531200, at *11.

The Court, therefore, rejects Charter One's characterization of all evidence relating to the conditions of the Interview as "solely" related to Plaintiff's dismissed hostile work environment claim and therefore irrelevant to the claims that remain for trial. The Court concludes that all of the evidence that Charter One seeks to exclude regarding the "tone and environment" of the Interview, i.e. the length of the Interview, the allegation that Plaintiff was denied use of the restroom, that Plaintiff was denied food or water and that Plaintiff was prevented from leaving the room until she signed a "coerced" statement, is relevant and admissible. Charter One will be free to cross examine Plaintiff on its claims, to wit, to point out, if Plaintiff denies it, that she never asked for food, water or a bathroom break. Likewise, Charter One can present evidence to rebut the suggestion that Plaintiff's Interview was significantly longer than other employee's interviews in connection with the investigation or that Plaintiff was coerced into signing the statement, and may cross examine

6

Plaintiff on these issues.

The "tone and environment" evidence that Charter One seeks to exclude clearly is relevant to Plaintiff's claims that remain for trial. Per Federal Rule of Evidence 403, the probative value of this evidence is not substantially outweighed by any potential prejudicial effect and Charter One has offered no other basis for exclusion of this evidence. Therefore, the Court DENIES Charter One's motion *in limine* to exclude evidence or attorney statements relating to the conditions of Plaintiff's Interview.

**B.      Charter One's *Daubert* Motion to Exclude the Testimony of Plaintiff's Social Worker, Cheryl Lajiness**

Charter One argues that Plaintiff should be precluded from introducing any evidence of emotional distress damages flowing from the March 14, 2007 Interview, including any testimony from Plaintiff's social worker, Cheryl Lajiness, on the subject, because such evidence is only relevant to Plaintiff's now-dismissed hostile work environment claim. The Court has rejected Charter One's relevance argument as discussed *supra* in Section IIIA.

Charter One argues additionally that Lajiness should be precluded from testifying because she was never disclosed as an expert witness. Charter One argues that even if Lajiness were permitted to testify, she should be precluded from testifying as an expert under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (requiring trial judges to act as "gatekeepers" and to exclude unreliable expert testimony unhelpful to the fact finder), because (1) Ms. Lajiness is not qualified to offer an expert opinion on Plaintiff's alleged Post Traumatic Stress Disorder ("PTSD"), (2) her testimony will not assist the jury and (3) her testimony is not based on a reliable foundation because it fails to evaluate the impact of other stressors on the

7

diagnosis of PTSD. Charter One finally argues that even if offered as a lay witness, Lajiness's testimony should be excluded under Federal Rule of Evidence 403 as unfairly prejudicial and cumulative.

Plaintiff responds that she was not required to disclose Lajiness as an expert under Fed. R. Civ. P. 26(a)(2) because Lajiness is Plaintiff's treating therapist. Treating physicians need not be listed as expert witnesses, assuming they are not retained for purposes of rendering an opinion specifically for litigation, and may opine as to causation to the extent such an opinion is a natural part of the treating relationship. In *Fielden v. CSX Transportation, Inc.*, 482 F.3d 866 (6th Cir. 2007), the Sixth Circuit concluded:

> Rule 26(a)(2)(B) by its terms provides that a party needs to file an expert report from a treating physician only if that physician was "retained or specially employed to provide expert testimony." In this case, Fielden did not retain Dr. Fischer for the purposes of providing expert testimony because there is evidence that Dr. Fischer formed his opinions as to causation at the time that he treated Fielden and there is no evidence that Dr. Fischer formed his opinion at the request of Fielden's counsel. The Advisory Committee Notes also support the conclusion that Fielden did not need to file an expert report from Dr. Fischer. The Note to Rule 26 states that "[a] treating physician ... can be deposed or called to testify at trial without any requirement for a written report." Fed.R.Civ.P. 26(a), cmt. 1993 Amendments, subdivision (a), para. (2). Under a straightforward reading of the rule and its advisory note, Fielden did not need to file an expert report from Dr. Fischer.

> This conclusion is supported by the obvious fact that doctors may need to determine the cause of an injury in order to treat it. Determining causation may therefore be an integral part of "treating" a patient.

482 F.3d at 869.

Shortly after Charter One terminated Plaintiff, she began treating with Ms. Lajiness, who has a Masters in Social Work from the University of Michigan and worked as licensed therapist for over 18 years. (ECF No. 72, Def.'s Mot. to Exclude Lajiness Testimony, Ex. 2, Feb. 11, 2010 Deposition

8

of Cheryl Lajiness, 12, 20, 32.) Plaintiff immediately began taking medications as recommended by Ms. Lajiness for anxiety and sleeplessness. (*Id.* 106.) Plaintiff treated with Ms. Lajiness approximately 25 times, until Plaintiff could no longer afford their sessions. (*Id.* 150, 163.) There is no evidence that Ms. Lajiness has been paid to give testimony or that her testimony is based on any materials given to her for review by Plaintiff's counsel or that Ms. Lajiness will testifying to anything outside the core of her treating relationship with Plaintiff.

The Court concludes that Ms. Lajiness may offer her testimony as Plaintiff's treating therapist without the necessity of filing an expert report. Ms. Lajiness was deposed at length and Defendant had ample opportunity, which it seized, to test Ms. Lajiness's observations, diagnosis and treatment. As Plaintiff's treating therapist, she will be permitted to testify regarding the factual symptoms that she observed or that Plaintiff reported to her, i.e. tearful, depressed, upset, crying, sleepless etc., on which she based her diagnosis of depression/anxiety. She also will be permitted to testify as to her conclusion that these symptoms were caused by Plaintiff's job loss, the Interview, loss of insurance, etc. Lajiness testified in her deposition that she never formed an opinion as to whether Plaintiff's emotional upset was caused by Charter One's discrimination or retaliation. (ECF No. 72, Ex. 2 Lajiness Dep. 164-65.) Any testimony at trial to the contrary obviously will be subject to cross-examination and impeachment. Additionally, Charter One will be permitted to cross-examine Ms. Lajiness on the many alleged shortcomings of her diagnosis and treatment of Plaintiff that were raised with Ms. Lajiness at her deposition.

The Court will preclude Ms. Lajiness, however, from offering any testimony regarding PTSD. "[A] treating physician's testimony is subject to *Daubert*." *In re Aredia and Zometa Pdcts. Liab. Litig.*, No. 11-5053, 2012 WL 2016249, at *4 (6th Cir. June 5, 2012) (citing *Gass v. Marriott*

*Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009). "Plaintiff [is] therefore required to demonstrate that [Ms. Lajiness's] reasoning or methodology was scientifically valid and that [she] properly applied that reasoning or methodology to the facts at issue." *Id.* With respect to Ms. Lajiness's opinion that Plaintiff suffered from PTSD as a result of her suspension and termination, Plaintiff has not met this burden.

First, Ms. Lajiness is trained as a social worker, not a psychiatrist or even a psychologist. Plaintiff states that Ms. Lajiness "diagnosed patients using the DSM-IV, with which she was familiar through her education." (ECF No. 79, Pl.'s Resp. to Def.'s Mot. to Exclude Lajiness Testimony 2.) Yet Ms. Lajiness's unfamiliarity with the DSM-IV ("Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, American Psychiatric Association") was apparent in her deposition, where she referred to Axis IV of the Multiaxial Assessment system, as the "something, something, something scale," did not know the meaning of the acronym "GAF" under Axis V and did not know the range of numbers on the GAF scale ("zero to 70 maybe, I don't know, I'm not sure"), even though she assigned Plaintiff a "GAF" score of 49. (ECF No. 72, Ex. 2, Lajiness Dep. 105-116.) Nor was she familiar with the DSM-IV definition of the essential features of PTSD, which includes the following guideline:

> The essential feature of Posttraumatic Stress Disorder is the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity . . . Traumatic events that are experienced directly include, but are not limited to, military combat, violent personal assault (sexual assault, physical attack, robbery, mugging), being kidnapped, being taken hostage, terrorist attack, torture, incarceration as a prisoner of war or in a concentration camp, natural or manmade disasters, severe automobile accidents, or being diagnosed with a life-threatening illness.

ECF No. 72, Ex. 5, DSM-IV 463-64; Lajiness Dep. 107-08. Conspicuous by its absence from this

list is a category including job loss or a difficult day at work facing accusations of wrongdoing. Ms. Lajiness is unqualified to render an opinion on PTSD and her testimony would be unreliable because she lacks fundamental knowledge regarding the disorder. Such testimony would not assist the jury in understanding any of the evidence or in determining any fact in issue. *See* Fed. R. Evid. 702; *Daubert, supra.*

Additionally, the Court notes that it would be inappropriate to permit the jury to consider an award of damages for PTSD in this case when Plaintiff has not offered any evidence that she experienced the type of "stressor" that the Sixth Circuit has recognized as a PTSD-type stressor. "As medically defined, PTSD concerns the development of characteristic symptoms following a psychologically traumatic event generally outside the range of usual human experience." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988). Plaintiff relies on *Sterling* to support Ms. Lajiness's diagnosis of PTSD, but ignores the significant restriction that the Sixth Circuit placed on PTSD damages awards in that case:

> Examples of stressors upon which courts have based awards for PTSD include rape, assault, military combat, fires, floods, earthquakes, car and airplane crashes, torture, and even internment in concentration camps, each of which are natural or man-made disasters with immediate or extended violent consequences. *See, e.g., Smith v. Smith*, 830 F.2d 11 (2d Cir.1987); *Howard v. Chesapeake & Ohio Railway*, 812 F.2d 282 (6th Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 78, 98 L.Ed.2d 40 (1987); *Bode v. Pan American World Airways*, 786 F.2d 669 (5th Cir.1986); *Richardson v. Secretary of Health and Human Services*, 8 Soc.Sec.Rep.Ser. 156, 750 F.2d 506 (6th Cir.1984). . . . A plaintiff's claim that a particular event or series of events caused [her] PTSD must be subjected to the closest scrutiny. The court must demand that a plaintiff produce sufficient authority that the particular event constitutes a "recognized stressor" or a psychologically traumatic event which would produce significant symptoms of distress in almost everyone experiencing such an event.

855 F.2d at 1210.

Plaintiff has provided no authority for her suggestion that being terminated from one's

11

employment, or even undergoing a seven-hour harassing interview, involving allegedly unfounded accusations of wrongdoing, without a bathroom break or anything to drink or eat, constitutes the type of violent event, "outside the range of human experience," that might support an award of damages based on a finding of PTSD. Accordingly, the Court will preclude Ms. Lajiness from testifying about her conclusion that Plaintiff presented with PTSD because she is unqualified to render such an opinion, her opinion is not supported by valid scientific evidence, her testimony would not assist the trier of fact and because Plaintiff has failed to demonstrate that Plaintiff suffered the type of injury that could ever support an award of damages for PTSD.

Accordingly, the Court will permit Ms. Lajiness to testify as Plaintiff's treating therapist "on issues pertaining to treatment, based on what [] she learned through actual treatment and from the plaintiff's records up to and including that treatment." *Fielden*, 482 F.3d at 871. Plaintiff is precluded from presenting any evidence or testimony regarding PTSD, including testimony of Ms. Lajiness that Plaintiff exhibited symptoms of PTSD. Likewise, Plaintiff is precluded from addressing or mentioning PTSD in opening or closing remarks to the jury.

## IV.    CONCLUSION

For the foregoing reasons, the Court (1) DENIES Charter One's Motion *In Limine* to Preclude Either Evidence or Attorney Statements Relating to Plaintiff's Dismissed Hostile Work Environment Claims (ECF No. 71) and (2) GRANTS IN PART AND DENIES IN PART Charter One's Motion *In Limine* to Exclude the Testimony of Cheryl Lajiness (ECF No. 72).

IT IS SO ORDERED.

Paul D. Borman
United States District Judge

Dated:   8-10-12

12